No. 22-30236

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

TURTLE ISLAND FOODS, S.P.C., DOING BUSINESS AS TOFURKY COMPANY,

*Plaintiff – Appellee*

v.

MICHAEL G. STRAIN, in his official capacity as Commissioner of Agriculture and Forestry,

*Defendant - Appellant*

**On Appeal from the United States District Court
for the Middle District of Louisiana**

**3:20-CV-674**

## BRIEF OF APPELLEE TURTLE ISLAND FOODS, S.P.C.

Respectfully submitted:

/s/ Scott L. Sternberg
Sternberg, Naccari & White, LLC
Suite 2020
935 Gravier Street
New Orleans, LA 70112
Telephone: 504-534-8961
Facsimile: 504-534-8961

Tarak Ananda, Esq.
Michael Andrew Foley
Jones Walker LLP
201 Saint Charles Avenue, Suite 4900
New Orleans, LA 70170
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
Email: tanada@joneswalker.com

Laura Braden
The Good Food Institute
1120 Connecticut Ave. NW
Suite 1080
Washington DC 20036
Telephone: (617) 970-1595
Email: laurab@gfi.org

Amanda Howell
Animal Legal Defense Fund
525 East Cotati Avenue
Cotati, CA 94931
Telephone: (707) 795-2533
Email: ahowell@aldf.org

*Counsel for Plaintiff-Appellee Turtle
Island Foods, S.P.C.*

No. 22-30236

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

TURTLE ISLAND FOODS, S.P.C., DOING BUSINESS AS TOFURKY
COMPANY,
*Plaintiff – Appellee*

v.

MICHAEL G. STRAIN, in his official capacity as Commissioner of Agriculture
and Forestry,
*Defendant - Appellant*

**On Appeal from the United States District Court for the Middle
District of Louisiana**

**3:20-CV-674**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that the

judges of this court may evaluate possible disqualification or recusal.

| Appellee: | Counsel for Appellees: |
|---|---|
| Turtle Island Foods, S.P.C. | Tarak Anada of Jones Walker, LLP New Orleans, LA |
| | Michael Foley of Jones Walker, LLP New Orleans, LA |

|  | Graham H. Williams of Sternberg, Naccari & White, LLC New Orleans, LA |
|  | Scott L. Sternberg of Sternberg, Naccari & White, LLC New Orleans, LA |
|  | Laura Braden of Good Food Institute Washington, DC |
|  | Amanda M. Howell of Animal Legal Defense Fund Cotati, CA |
|  | Caitlin Foley of Animal Legal Defense Fund Cotati, CA |

| Appellants: | Counsel for Appellants: |
|---|---|
| Michael Strain | E. John Litchfield of Berrigan Litchfield, LLC Metairie, LA |
|  | Michael J. Marsiglia of Berrigan Litchfield, LLC Metairie, LA |

/s/ Scott L. Sternberg
*Attorney of record for Plaintiff-Appellee Turtle Island Foods, S.P.C.*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee Turtle Island Foods SPC, d/b/a Tofurky Company submits that oral argument would assist the Court in understanding the issues on appeal and rendering a decision in this case.

# TABLE OF CONTENTS

Contents………………………………………………………………Pages(s)

CERTIFICATE OF INTERESTED PERSONS ....................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ............................................. v

TABLE OF CONTENTS ........................................................................... 6

TABLE OF AUTHORITIES ....................................................................... 7

JURISDICTIONAL STATEMENT ............................................................... 1

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE ................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................ 10

ARGUMENT ......................................................................................... 11

CONCLUSION ...................................................................................... 38

CERTIFICATE OF SERVICE ................................................................... 39

CERTIFICATE OF COMPLIANCE ............................................................ 40

# TABLE OF AUTHORITIES

## Cases

*Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300 (5th Cir. 2017)....................................29

*Ang v. Whitewave Foods Co.*, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) ............................28

*Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018)....................................34

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979) .............................................21

*Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977) .......................................................................33

*Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566 (5th Cir. 2012)........................................12

*Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983) .........................................................24

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm 'n of N.Y.*, 447 U.S. 557 (1980) .. 23, 24, 29

*Childers v. City of Arlington Tex.*, 54 F. App'x 799 (5th Cir. 2002)............................................11

*Edenfield v. Fane*, 507 U.S. 761 (1993) ...............................................................................29, 30

*Elrod v. Burns*, 427 U.S. 347 (1976). ......................................................................................15

*Express Oil Change, LLC, v. Mississippi Bd. of Licensure for Professional Engineers & Surveyors*, 916 F.3d 483 (5th Cir. 2019) .............................................................................24

*Hill v. Colorado*, 530 U.S. 703 (2000) ......................................................................................34

*Hobbs v. Thompson*, 448 F.2d 456 (5th Cir. 1971) ...................................................................36

*Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.*, 512 U.S. 136 (1994)..........................23

in *Barilla v. City of Houston, Texas*, 13 F.4th 427 (5th Cir. 2021) .............................................12

*Int'l Dairy Foods Ass'n*, ............................................................................................................30

*Kolender v. Lawson*, 461 U.S. 352 (1983)................................................................................35

*Lewis v. Tripp*, 604 F.3d 1221 (10th Cir. 2010) ..................................................................12, 14

*Matter of Wiggains*, 848 F.3d 655 (5th Cir. 2017). ...................................................................26

*Miyoko's Kitchen v. Ross*, No. 20-CV-00893-RS, 2020 WL 8361994 (N.D. Cal. Aug. 21, 2020) ...........................................................................................................................................28

*Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228 (11th Cir. 2017)........................................28

*Ostrewich v. Hudspeth*, No. 4:19-CV-00715, 2021 WL 4170135 (S.D. Tex. Sept. 14, 2021) .... 14

*Painter v. Blue Diamond Growers*, 757 F. App'x 517 (9th Cir. 2018) .......................................28

*Pub. Citizen Inc. v. Louisiana Att'y Disciplinary Bd.*, 632 F.3d 212 (5th Cir. 2011)...................29

*Rhode Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 31 (1st Cir. 1999).................21

*Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347 (5th Cir. 2014)..........................................11

*Roy v. City of Monroe*, 950 F.3d 245 (5th Cir. 2020) .................................................................37

*Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) ...................................................................32

See *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338 (5th Cir. 2013)...............................14

*Service Employees Intern. Union, Local 5 v. City of Houston*, 595 F.3d 588 (5th Cir. 2010)34, 35, 37

*Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803 (7th Cir. 2016).......................20

*Snow v. First Am. Title Ins. Co.*, 332 F.3d 356 (5th Cir. 2003)...................................................14

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020), *as revised* (Oct. 30, 2020).............. 15

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)............................................................ 12

*Turtle Island Foods v. Soman*, 424 F. Supp. 3d 552 (E.D. Ar. 2019) ................................. 28, 30

*Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694 (8th Cir. 2021) ...................................... 26

*United States v. M/Y Galactica Star*, 13 F.4th 448 (5th Cir. 2021)............................................ 11

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)...................... 34

**Statutes**

Fed. R. Civ. P. 56(c) ................................................................................................................ 11

La. Rev. Stat. § 3:4742.............................................................................................................. 3

La. Rev. Stat. § 3:4743.................................................................................................... 26, 35

La. Rev. Stat. § 3:4743.............................................................................................................. 3

La. Rev. Stat. § 3:4744.......................................................................................... 25, 26, 35

La. Rev. Stat. § 3:4746.......................................................................................................... 3, 8

La. Rev. Stat. § 40:608.............................................................................................................. 4

La. Rev. Stat. § 51:411.............................................................................................................. 4

La. Rev. Stat. §§ 3:4741-4746.................................................................................................. 1

La. Rev. Stat. §§ 3:4744............................................................................................................ 3

La. Stat. Ann. § 3:4744(B)........................................................................................................ 2

La. Stat. Ann. § 3:4746(A)........................................................................................................ 3

La. Stat. Ann. §§ 3:4741-4746.................................................................................................. 3

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this matter arises under the Complainant's rights under the U.S. Constitution. This Court has jurisdiction over this appeal pursuant to 29 U.S.C. § 1291 because it is an appeal from a final decision of a U.S. District Court, namely, the Middle District of Louisiana, the Honorable Brian Jackson, Judge, presiding.

# STATEMENT OF THE ISSUES

1. Whether the District Court properly held that Complainant Tofurky, a company that sells plant-based products labeled with "meat" terms, has standing to challenge the Act, which sought to prohibit the use of "meat" terms on plant-based products?

2. Whether the District Court properly held that the Act, which prohibits food labeling and advertising practices that are not misleading, is an unconstitutional restriction on commercial speech under the First Amendment?

# STATEMENT OF THE CASE

## I.     FACTUAL BACKGROUND

### A.     The Act

Louisiana's 2019 Act No. 273, codified at La. Rev. Stat. §§ 3:4741-4746 ("the Act"), was signed into law on June 11, 2019, with an effective date of October 1, 2020. ROA. 57, 154. The Act prohibits any plant-based meat producer

from using "meat" representations or terminology on product labels or in

marketing materials. Specifically, the Act prohibits, in relevant part:

> (2) Selling a food product under the name of an agricultural product.
> …
>
> (4) Representing a food product as meat or a meat product when the food product is not derived from a harvested beef, pork, poultry, alligator, farm-raised deer, turtle, domestic rabbit, crawfish, or shrimp carcass.
>
> …
>
> (6) Representing a food product as beef or a beef product when the food product is not derived from a domesticated bovine.
>
> (7) Representing a food product as pork or a pork product when the food product is not derived from a domesticated swine.
>
> (8) Representing a food product as poultry when the food product is not derived from domesticated birds.
>
> (9) Utilizing a term that is the same as or deceptively similar to a term that has been used or defined historically in reference to a specific agricultural product.
>
> …
>
> (11) Representing a cell cultured food product as a meat product.

La. Rev. Stat. § 3:4744(B); ROA. 57. The Act classifies each of these prohibited

activities as "intentionally misbranding or misrepresenting a food product as an

agricultural product." La. Rev. Stat. § 3:4744(B); ROA. 57. The Act defines

"meat" as:

> "Meat" means a portion of a beef, pork, poultry, alligator, farm-raised deer, turtle, domestic rabbit, crawfish, or shrimp carcass that is edible by humans but does not include a:
> (a) Synthetic product derived from a plant, insect, or other source.

(b) Cell cultured food product grown in a laboratory from animal cells. La. Rev. Stat. § 3:4743.

The Act's express prohibition against "representing" plant-based food products as meat, pork, or poultry products by using "meaty" terms such as such as "vegan sausage" where those products do not conform with the statutory definitions of meat terms clearly implicates the marketing and labeling of Tofurky's and other plant-based meat producers' products. The Act applies not only to plant-based meat producers but also to plant-based milk and cheese producers, and even cauliflower producers. *See, e.g.*, La. Rev. Stat. §§ 3:4744(3), (9); ROA. 57. The Act does not carve out any exemptions for products that clearly identify themselves as "vegan" or "plant-based." *See* La. Rev. Stat. §§ 3:4741-4746.

The Appellant/Defendant, the elected state Commissioner of Agriculture and Forestry, has the sole authority to enforce the Act. La. Rev. Stat. § 3:4745; ROA. 58. The Act imposes a penalty of $500 per violation. "Each day on which a violation occurs" is considered to "be a separate offense." La. Rev. Stat. § 3:4746(A); ROA. 58. Costs for any adjudicatory hearing may also be imposed on a party accused of violating the Act. La. Rev. Stat. § 3:4746(C); ROA. 58.

The Act was purportedly enacted to "protect consumers from misleading and false labeling of food products that are edible by humans." La. Rev. Stat. § 3:4742;

3

ROA. 57. In the course of debating and passing the Act, however, no evidence was presented to the Louisiana legislature or its committees indicating that consumers were or could be confused by plant-based meat product labels that use the word "meat" or related "meaty" terms. ROA. 154, 283-334. Likewise, no evidence was presented to the legislature, or its committees, indicating that consumers are *likely* to be confused by cell-cultured food product labels that use "meat" or related terms. ROA. 155, 283-334.

The State itself has admitted that there is no history of consumer confusion concerning any plant-based food labeling, and at the court below failed to present any evidence of confusion, real or anticipated. ROA. 337. Moreover, numerous federal and state laws already exist to protect consumers from misleading and false food labels, including the federal Food, Drug and Cosmetic Act, 21 U.S.C. § 343(a) (prohibiting labels and labeling that are "false or misleading in any particular"); the Federal Trade Commission Act, 15 U.S.C. § 45 (prohibiting "unfair or deceptive acts or practices" in or affecting commerce); Louisiana's Food, Drug, and Cosmetic Law, La. Rev. Stat. § 40:608(1) (prohibiting "misbranded food" including any "labeling" that is "false or misleading in any particular"); and the State's consumer protection law, La. Rev. Stat. § 51:411 (prohibiting any "advertisement" which "contains any assertion, representation, or statement of fact which is untrue, deceptive, or misleading"). ROA. 14-16.

4

At a May 30, 2019 hearing before the Louisiana House of Representatives Committee on Agriculture, Forestry, Aquaculture, and Rural Development, Louisiana state legislators and various stakeholders testified in support of the bill that would become the Act, stating expressly that its purpose was to protect Louisiana's agricultural producers. For example, Representative Clay Schexnayder proclaimed that "I think everybody in here is wanting to protect the interests of our rice farmers and our beef farmers and so on." ROA. 297. Similarly, Senator Francis Thompson said that "[w]e must protect our industry in this state[,] agriculture. It's the number one industry in the state of Louisiana." ROA. 300.

Further, Defendant-Appellant Strain publicly admitted his predilection to protect the state's beef and pork industries. ROA. 296. Strain said, "when you look at the value of these industries and what we're trying to do, there's a reason we're here, right? Because there's encroachment on these industries…." ROA. 296. In short, the Act's creators have admitted that it was designed to restrict how plant-based and cell-cultured meat products can be labeled and marketed in order to protect traditional agricultural interests in the state, not to protect consumers.

### B.   There is no Evidence of Consumer Confusion over Plant-Based Meat Products and How They are Labeled.

The State has not and cannot present evidence that consumers are confused by plant-based meat labels and advertisements. That is because they are not. Empirical studies show that consumers are not confused or misled by plant-based

meat products' labeling and marketing. ROA. 250. Studies have found a lack of confusion over the use of terms like "burger," "beef," "sausage," and "cheese" on products that also state they are "vegan" or "plant-based" (*e.g.*, "plant-based beef" or "vegan cheese"). ROA. 256-57, 267-272. These same studies also show that consumers would be *more* confused if companies removed meat terms and used alternative names, like "veggie tube" instead of "veggie sausage." *See, e.g.*, ROA. 272-73, 399-417. The inclusion of "meat" terms (along with appropriate qualifiers) on plant-based products assists the consumer in understanding the products' flavor, texture, and function. "Omitting words that are traditionally associated with animal products from the names of plant-based products actually causes consumers to be significantly **more** confused about the taste and uses of these products." ROA. 250 (emphasis in original).

### C.    The Growth of the Plant-Based Industry and Perceived Threats to Traditional Animal Agriculture

Since early 2017, sales of plant-based foods have skyrocketed, growing 31%. ROA. 429. Plant-based meat is a $1.4 billion market and the plant-based meat category has grown twice as fast as conventional meat sales. ROA. 442, 456. In response, the meat industry has taken steps to combat the growth of the rival plant-based meat market. ROA. 470. Such efforts have largely failed at the federal level— leading the meat industry to take the state legislative route. In Missouri, Arkansas, and Louisiana, state Cattlemen's Associations have encouraged the passage of laws

like the Act. In short, good old-fashioned economic protectionism is at least *part* of what led Louisiana's legislature to pass the Act. ROA. 296-97, 300.

### D.    Tofurky's Labeling and Marketing Practices.

Tofurky is a certified B corporation that produces food with the aim of respecting people, animals, and the planet. ROA 187. Tofurky produces and packages plant-based meat products, which are marketed and sold in Louisiana and nationwide. ROA. 186. Tofurky's labels use "meat" terms, including sausage, roast, deli slices, chik'n, ham style, burger, hot dogs, and more. ROA. 186, 190.

Tofurky's labels and marketing materials clearly state that its products are plant-based, meatless, vegetarian, and/or vegan. ROA. 186-87. This is key to Tofurky's mission to encourage consumers to adopt a plant-based diet. ROA. 187. The "value proposition" that Tofurky provides its customers "is that our products are plant-based." ROA 187. Tofurky uses well-established compound labeling conventions like "plant-based sausage" to convey that its products are 100% plant-based but look, taste, and can be used just like meat from animals. ROA. 186-87. In compliance with federal law, Tofurky's labels and marketing materials also accurately list the products' ingredients. ROA. 187.

### E.    The Harm the Act Has Caused to Tofurky

Under the plain language of the Act, Tofurky could potentially be penalized $500 per day for every single product it sells in Louisiana, and for every marketing

statement it makes about its products. La. Rev. Stat. § 3:4746(A); ROA. 58. This would mean hundreds of millions of dollars in civil fines, which would be financially ruinous for the company. ROA. 188. The threat of enforcement has caused Tofurky to restrict its speech and consider costly changes to its product labeling, marketing, and business practices—all of which would increase consumer confusion rather than help consumers. ROA. 189-190.

But Tofurky cannot accurately and effectively describe its products without comparison to conventional meat products. ROA. 190. Tofurky would also need to spend exorbitant amounts to change its labeling and marketing materials nationwide. ROA. 189. Attempting to change labels on Louisiana-bound products alone would be insufficient to avoid potential enforcement, as distributors often operate regionally, not by state. ROA 189. It would be impossible for Tofurky to ensure that its products do not end up in Louisiana. ROA 189.

Moreover, large retail chains often refuse to sell products with placement restrictions, so Tofurky would either be forced to change all of its labels and marketing materials, or face rejection from major retailers that currently sell its products, like Walmart. ROA 189-190. Tofurky could also be held liable for advertising that inadvertently spills into Louisiana markets. ROA. 190.

Moreover, the Act has *already* chilled Tofurky's speech. Despite the fact that its current and intended labels and marketing materials are truthful and not

misleading, Tofurky has refrained from using certain words and images on these materials, and has removed videos from its website and social media in response to the Act. ROA. 189. The company has "essentially avoided saying anything new out of fear of enforcement." ROA. 189.

## II.  PROCEDURAL HISTORY

Tofurky filed this case in the U.S. District Court for the Middle District of Louisiana on October 7, 2020. ROA. 3. The state filed its answer on November 23, 2020. ROA. 4. On July 1, 2021, the parties filed cross-motions for summary judgment. ROA. 7. Each party filed a response to the other's motion. ROA. 7-8. Tofurky also filed a reply in support of its own motion. ROA. 8. On November 15, 2021, the district court heard oral argument on the cross-motions for summary judgment. ROA. 8. Both parties filed supplemental memoranda following the hearing. ROA. 8. On March 28, 2022, the district court granted Tofurky's motion for summary judgment, declaring the Act unconstitutional under the First Amendment and enjoining defendants from enforcing the Act. ROA. 8, 678-683. In the same order, the district court denied the State's cross-motion for summary judgment. ROA. 8, 683. Following the ruling, the state filed a Notice of Appeal on April 21, 2022. ROA. 9, 684.

# SUMMARY OF THE ARGUMENT

The district court correctly held that Tofurky has standing to challenge the Act. First, the district court applied the correct standard in determining that Tofurky has standing. The court relied on the test set forth in *Barilla v. City of Houston, Texas*, 13 F.4th 427 (5th Cir. 2021) and its progenitors, which applies at any phase of litigation. Second, the district court properly held that Tofurky has suffered an injury in fact. Tofurky has demonstrated that (1) it intends "to engage in a course of conduct arguably affected with a constitutional interest," (2) its intended future conduct is arguably proscribed by the Act, and (3) the threat of future enforcement of the Act is substantial. *See Barilla*, 13 F.4th at 431–32. Moreover, Tofurky has demonstrated that the Act has already chilled its speech. Accordingly, Tofurky has alleged an injury in fact sufficient for Article III standing.

The district court also properly held that the Act violates the First Amendment. The Act restricts commercial speech on food product labels and marketing materials. The State failed to carry its burden under the *Central Hudson* test to justify this restriction on commercial speech. First, the State relied on an invalid interest in economic protectionism in passing the Act. Although the State claims the purpose of the Act is to prevent consumer confusion, the Act does not directly advance that interest. Furthermore, the Act is far more extensive than

10

necessary to serve the State's purported interest in consumer protection. The State's speech restriction thus cannot stand.

Finally, the Act is unconstitutionally vague. It fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. The Act also encourages arbitrary and discriminatory enforcement. Accordingly, the Court should **AFFIRM** the rulings of the district court.

## ARGUMENT

### I.    STANDARD OF REVIEW

Summary judgment is warranted "if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Childers v. City of Arlington Tex.*, 54 F. App'x 799 (5th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). On appeal, this Court is "not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record." *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).

This Court reviews "all facts expressly or impliedly found by the district court," including facts relevant to standing, for clear error. *United States v. M/Y Galactica Star*, 13 F.4th 448, 453 (5th Cir. 2021). When determining jurisdictional issues at the summary judgment stage, courts "generally accept as true all well-

pleaded facts supported by the record and draw all reasonable inferences in favor of standing." *Lewis v. Tripp*, 604 F.3d 1221, 1224 (10th Cir. 2010).

Legal questions are reviewed *de novo*. *Id*. Mixed questions of law and fact "should be reviewed under the clearly erroneous standard if factual questions predominate, and *de novo* if the legal questions predominate." *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 569 (5th Cir. 2012).

## II.     THE DISTRICT COURT PROPERLY HELD THAT TOFURKY HAS STANDING TO CHALLENGE THE ACT.

The district court determined that Tofurky has standing to challenge the Act. On appeal, the State argues that the district court incorrectly applied the test set forth in *Barilla v. City of Houston, Texas*, 13 F.4th 427, 432 (5th Cir. 2021) and that Tofurky has not suffered an injury in fact. Neither argument holds weight.

### A.     The District Court Applied the Correct Standard in Determining that Tofurky has Standing.

"In pre-enforcement cases alleging a violation of the First Amendment's Free Speech Clause, the Supreme Court has recognized that chilled speech or self-censorship is an injury sufficient to confer standing." *Barilla*, 13 F.4th at 431. A plaintiff "need not have experienced 'an actual arrest, prosecution, or other enforcement action' to establish standing." *Id.* In *Barilla*, this Court reiterated the three-prong test set forth in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), for determining whether a plaintiff has suffered an injury in fact for

purposes of Article III standing in pre-enforcement cases. A plaintiff has suffered an injury in fact if it can show (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that its "intended future conduct is arguably…proscribed by" the law in question, and (3) a substantial "threat of future enforcement of the" challenged law. *Barilla*, 13 F.4th at 431–32 (internal citation omitted). Courts "assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* at 432.

In determining that Tofurky has standing to challenge the Act, the court below applied the *Barilla* test because this matter is a pre-enforcement challenge to a law that Tofurky alleges violates the First Amendment's Free Speech Clause. Although *Barilla* is clearly on point, the State argues that the district court was wrong to apply *Barilla* on summary judgment because the court in *Barilla* addressed standing at the pleading stage. The State's argument is without merit. The test set forth in *Barilla* applies regardless of the phase of litigation.

Although the dispute at issue in *Barilla* was raised on a motion to dismiss, *Barilla* did not limit its reasoning to standing challenges brought at the pleading stage. In fact, the court explained that the plaintiff "bears the burden of establishing his standing 'in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 431. Rather than limit its reasoning to

early phases of litigation, the *Barilla* court reiterated the doctrinal concept that the burden of proof for standing is the same as the burden for any other matter at each respective phase of litigation. Nothing in the Court's decision limits the test to "a very early stage of the litigation." Appellant's Br. 17. Moreover, the factors set forth in *Barilla* have been applied by courts at the summary judgment stage. *See, e.g.*, *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 345 (5th Cir. 2013) (applying the three-part test on appeal from summary judgment); *Ostrewich v. Hudspeth*, No. 4:19-CV-00715, 2021 WL 4170135, at *8 (S.D. Tex. Sept. 14, 2021), report and recommendation adopted, No. 4:19-CV-00715, 2021 WL 4480750 (S.D. Tex. Sept. 30, 2021) (applying assumption of credible threat of prosecution on summary judgment).

In accordance with its burden on summary judgment, Tofurky did not simply *plead* facts sufficient to show that it has met the *Barilla* test, Tofurky submitted a sworn declaration evidencing those facts. ROA. 155-56, 186-245. Moreover, the State did not dispute those facts. ROA. 634-36. Thus, the district court properly accepted them as undisputed in deciding this case on summary judgment. *See Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 358 (5th Cir. 2003); *see also Lewis v. Tripp*, 604 F.3d 1221, 1224 (10th Cir. 2010) (on summary judgment, courts "generally accept as true all well-pleaded facts supported by the record and draw all reasonable inferences in favor of standing"). The lower court's

14

reliance on *Barilla* and its acceptance of Tofurky's undisputed facts were appropriate at the summary judgment stage of litigation. The State's claims otherwise are erroneous.

### B.   The District Court Properly Held that Tofurky has Suffered Injury in Fact.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Fifth Circuit "has repeatedly held, in the pre-enforcement context, that [c]hilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-31 (5th Cir. 2020), *as revised* (Oct. 30, 2020) (internal citation omitted). Courts use the factors set forth in *Barilla* (and prior Fifth Circuit caselaw) to determine whether a plaintiff's speech has been chilled.

Here, the district court correctly determined that Tofurky has suffered an injury in fact because the Act has chilled Tofurky's speech. The State claims that the district court erred because Tofurky is merely a "bystander" with some abstract disdain for the Act, and cannot claim it will be harmed by the Act. On the contrary, the Act directly implicates Tofurky's current marketing and labeling practices, has already caused the company to engage in self-censorship, and will lead to crushing costs for the company if it is allowed to stand. ROA. 155-56, 186-91. As the district court properly held, under *Barilla*, Tofurky has demonstrated "(1) an

15

'intention to engage in a course of conduct arguably affected with a constitutional interest'; (2) its intended future conduct is arguably proscribed by the policy at issue; and (3) the threat of future enforcement of the challenged policy is substantial." ROA. 670-71, 674. Accordingly, Tofurky has alleged an injury in fact sufficient to demonstrate Article III standing.

1.    *Tofurky Intends to Engage in Conduct Arguably Affected with a Constitutional Interest.*

The First Amendment applies to commercial speech—speech that proposes a commercial transaction—so long as it is not misleading or related to illegal activity. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980). Tofurky intends to engage in commercial speech in Louisiana, through product labels and marketing materials that are neither misleading nor related to illegal activity, and that are therefore protected by the First Amendment. *See* ROA. 187-90. Specifically, Tofurky has shown that it sells and plans to continue to sell plant-based products in Louisiana and that its product labels and advertisements use meat terms (*i.e.*, "burger" or "hot dogs") to help consumers understand the taste, texture, and function of the products. ROA. 155,

186-90. The State did not dispute Tofurky's constitutional interest on summary judgment and does not appear to do so on appeal.

2.    *Tofurky's Intended Future Conduct is Arguably Proscribed by the Act.*

The plain language of the Act sweeps broadly enough to be enforced against much of Tofurky's intended conduct. The State claims that Tofurky must prove "that it intends to break Louisiana law by intentionally misbranding or misrepresenting its products to Louisiana consumers." Appellant's Br. 19. But Tofurky need not intend to mislead consumers to be prosecuted under the Act.

The Act specifically defines "misbranding and misrepresenting" to include, among other acts, "[r]epresenting a food product as meat or a meat product when the food product is not derived from a harvested [animal]," "as beef or a beef product when the food product is not derived from a domesticated bovine," "as pork or a pork product when the food product is not derived from a domesticated swine," or "as poultry when the food product is not derived from domesticated birds." ROA. 17, 57-58. Tofurky sells, and will continue to sell, products that are labeled and advertised as plant-based meat, including plant-based beef, pork, and poultry. For example, it sells "vegan sausages, roasts, deli slices, chik'n, and 'pockets' in flavors like 'ham style & ched'dar" and uses terms like "burger," "chorizo," and "hot dogs" on its labels and in advertisements to describe the taste, texture, and function of its products. ROA. 155-56, 186, 190. The State has not

17

disputed the fact that Tofurky uses and intends to use these terms on its plant-based products.

The Act also prohibits "[u]tilizing a term that is the same as or deceptively similar to a term that has been used or defined historically in reference to a specific agricultural product." ROA. 17, 57. The Act provides no limitation to this provision. Thus, the Act could be used to prosecute the producer of any product that uses any term that has been used at any time in history to refer to any type of agricultural product. Terms such as "sausage," "ham," and "roast" have long been used to describe products made from harvested animals, subjecting Tofurky to enforcement for labels and advertisements that use these terms to describe plant-based products.

In attempting to argue its way around the plain language of the Act, the State claims that Tofurky "fails to describe or even identify any conduct of the Commissioner which puts it in any jeopardy." Appellant's Br. 13. But the Commissioner's conduct is not the speech restriction at issue. The Act is the speech restriction at issue.

The State also claims that Tofurky has no standing because the current Commissioner has declared that he believes nine of Tofurky's product labels do not violate the Act. Appellant's Br. 14. But the current Commissioner's interpretation of the Act with respect to a handful of Tofurky's labels does not

change the plain meaning and legislative history of the statute, nor does it affect

the actions of future Commissioners who will have authority to interpret and

enforce the Act as they see fit. As the district court explained, Tofurky "has no way

of knowing whether its additional current or future labels might violate the Act."

ROA. 675. And "a new Commissioner may take a different approach in response

to the Act and seek enforcement against Plaintiff for its vast array of labeling…."

ROA. 675. It is the Act itself, not the opinion of the current Commissioner, that

threatens to punish Tofurky for its protected speech.

Moreover, the State's hyper-focus on the nine exemplary labels attached to

the complaint ignores the undisputed fact that Tofurky has said that it does, and

intends to, use other labels and advertisements that would arguably violate the Act

and has *already* refrained from engaging in speech related to its products that

would arguably violate the Act. It is undisputed that "the company has essentially

avoided saying anything new out of fear of enforcement and has refrained from

using certain words and images on marketing materials and packages" and has

"even removed content from [its] website and online marketing out of fear of

enforcement under the Act." ROA. 189. Given the size of Tofurky's business, it

would be subject to "hundreds of millions of dollars in fines—under the Act."

ROA. 188. This leaves Tofurky with:

> the untenable choice of: (1) risking massive civil penalties, along with
> all of the harms that result from being penalized, by continuing our

19

current marketing and packaging practices; (2) creating specialized marketing and packaging practices just for the state of Louisiana, including attempting to police spillover from marketing in nearby states; (3) changing our marketing and packaging practices nationwide; or (4) refraining from marketing or selling our products in Louisiana at all.

ROA. 189.

The State's attempt to focus the Court's attention on the current Commissioner's declaration and the nine labels Tofurky included photos of in its complaint *as examples* is a distraction from the real issue: the Act's sweeping text. Tofurky has submitted unrefuted evidence that it sells and will continue to sell plant-based products using "meat" terms in Louisiana. The plain language of the Act encompasses this conduct. Tofurky has thus satisfied the second element of the *Barilla* test.

>    3.    *There is a Substantial Threat of Future Enforcement of the Act Against Tofurky.*

In the case of a pre-enforcement challenge, courts "assume a credible threat of prosecution in the absence of compelling contrary evidence." *Barilla*, 13 F.4th at 432 (internal citation omitted). This assumption applies even on summary judgment. *See Ostrewich*, 2021 WL 4170135 at *8 (applying assumption of a credible threat of prosecution on summary judgment); *Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016) (applying assumption of a credible threat of prosecution on appeal from summary judgment order); *Rhode*

20

*Island Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 31 (1st Cir. 1999) (same). This requirement follows from the United States Supreme Court's holding in *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) that, where "the State has not disavowed any intention of invoking" the challenged law, plaintiffs are "not without some reason in fearing prosecution." *Id.*

Here, the district court properly found that the State has not provided compelling evidence that the Act will not be enforced against Tofurky. The State repeatedly cites the current Commissioner's declaration that *some* of Tofurky's current conduct does not violate the Act. Courts do not find such proclamations compelling. For example, in *Speech First*, an organization representing University of Texas students brought suit against the president of the university, challenging several of the school's policies regulating student speech. 979 F.3d at 322 (5th Cir. 2020). The defendant argued that there was not a substantial threat of future enforcement of the policies because university officials did not intend to penalize the students represented by the plaintiff for their protected speech. This Court held that such Statements were "not compelling." *Id.* at 336.

The problem with disavowing any intent to enforce a law in a manner contrary to the First Amendment is that it "simply reinforce[s] the open-ended language" of the law. *Id.* at 337. Laws that use broad or vague language, even if intending only to regulate non-protected speech, "can in fact cover speech

21

otherwise protected by the First Amendment." *Id.* at 337. In other words, the intent to only enforce a law against speech that is not protected—such as misleading commercial speech—is not enough to overcome the assumption of future enforcement against protected speech. *See id.* Accordingly, this Court held, where a policy remains in place, the plaintiff's "speech is arguably regulated by the policy," and "the claim is that the policy causes self-censorship among those who are subject to it[,] …there is standing." *Id.* at 336–37.

Here, the Act remains in place, it arguably restricts Tofurky's speech, and Tofurky has provided undisputed evidence that the Act has caused and continues to cause self-censorship. ROA. 189. The logic of *Speech First* applies to an even greater extent in the present case because (1) the Commissioner has only declared that he does not intend to enforce the Act against *some* of Tofurky's current speech; (2) the Commissioner's declaration does not apply to Tofurky's future speech that may differ from its current speech; and (3) a future Commissioner will have authority to interpret and enforce the Act in a different manner from the current Commissioner.

The Commissioner's declaration is insufficient to eliminate the substantial threat of enforcement that looms over Tofurky. As the district court explained, "likelihood is all that is necessary to establish" a substantial threat of future enforcement. As long as the Act remains enforceable in Louisiana, there is a

substantial threat of enforcement sufficient to satisfy the third prong of the *Barilla*

test. By meeting all three prongs of the *Barilla* test, Tofurky has demonstrated that

it has suffered an injury in fact and therefore has standing to challenge the Act.

### III.    THE DISTRICT COURT PROPERLY HELD THAT THE ACT VIOLATES THE FIRST AMENDMENT.

Just as it did below, the State again fails to meet its burden of showing that

the Act's restriction on commercial speech "directly and materially advances a

substantial state interest in a manner no more extensive than necessary to serve that

interest." *Ibanez v. Fla. Dep't of Bus. & Pro. Regul., Bd. of Acct.*, 512 U.S. 136, 142

(1994) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447

U.S. 557, 566 (1980)). The district court applied *Central Hudson* and correctly found

that the Act "impermissibly restricts commercial speech because the speech at issue

is not misleading, and while the governmental interest is likely substantial, the Act

is more extensive than necessary to further the Government's interest." ROA. 679.

There, as here, the State's sole argument in defense of the Act is that it prohibits

nothing more than misleading speech and does not prohibit the exemplary labels in

Tofurky's complaint. Appellant's Br. 25 ("The Act only suppresses misleading

speech.").

As established above, the State's claim that the Act does not encompass or

infringe on truthful commercial speech like that of Tofurky does not reflect the plain

language of the statute, and the State's strangled interpretation of the Act cannot

change the plain meaning of its text. The Act's prohibitions extend beyond misleading speech to encompass the labeling conventions used by Tofurky and others, and it cannot survive review under *Central Hudson*.

### A. The State has Entirely Abdicated its Burden to Establish that the Act Satisfies *Central Hudson.*

The State and Tofurky agree that the Court must apply the intermediate scrutiny test mandated by *Central Hudson* in commercial speech cases where the government acts to restrict or prohibit speech, on the ground that in such cases intermediate scrutiny appropriately protects the interests of both the speaker (the seller) and the audience (the purchaser). That test makes four inquiries: (1) whether the speech "concern[s] lawful activity and" is not "misleading"; (2) "whether the asserted governmental interest" justifying the restriction "is substantial"; (3) "whether the [restriction] directly advances the governmental interest asserted"; and (4) whether the restriction "is not more extensive than is necessary to serve that interest." *Central Hudson*, 447 U.S. at 566. Here, the State has failed to meet every prong of that test.

As the lower court noted, "the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Express Oil Change, LLC, v. Mississippi Bd. of Licensure for Pro. Engineers & Surveyors*, 916 F.3d 483, 487 (5th Cir. 2019) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n.20 (1983)). This "burden is a heavy one, and may not be satisfied by mere speculation

24

or conjecture." *Id*. (internal quotation marks and citations omitted). In the face of this heavy burden, the State relies exclusively on its contention that the Act only bans intentionally misleading commercial speech—and urges this Court to go "no further in its *Cent. Hudson* application" than to determine that Tofurky's speech is neither false or misleading—and therefore not proscribed by the Act. Appellant's Br. 27. The State disregards the fact that the Act defines truthful speech that Tofurky engages in, like calling its products "plant-based sausage," as conduct that, by the very text of the Act, "intentionally misbrand[s] or misrepresent[s]" a food product. *See* La. Rev. Stat. § 3:4744(B).

To support its *Central Hudson* argument, the State has also failed to cite a shred of evidence in the record to show that (1) consumer confusion exists; (2) the Act does anything to prevent consumer confusion; or (3) the myriad (and longstanding) less restrictive means of ensuring truthful and nonmisleading labels are somehow insufficient. In contrast, and although the burden does not rest with it, Tofurky introduced ample empirical evidence showing consumer confusion does not exist; that the Act—rather than preventing confusion—actually creates consumer confusion; and that there are numerous less restrictive methods of ensuring food products do not mislead consumers. ROA. 249-276, 398-426.

### B.    The Plain Language of the Act Does Not Simply Prohibit False Statements of Fact; it Clearly Applies to Tofurky's Conduct.

The Louisiana Act does not simply prohibit false statements of fact—it bans a laundry list of speech that the Act defines as "intentionally misbrand[ing] or misrepresent[ing]." La. Rev. Stat. § 3:4744(B). The Act also defines meat to specifically exclude "(a) synthetic product derived from a plant, insect, or other source, (b) cell cultured food product grown in a laboratory from animal cells." La. Rev. Stat. § 3:4743(10). Based on the plain language of the law, it is clear the Act restricts certain commercial speech by non-animal-meat producers only. When a statute's language is "plain and unambiguous, it must be given effect." *Matter of Wiggains*, 848 F.3d 655, 661 (5th Cir. 2017) (quoting *BMC Software, Inc. v. C.I.R.*, 780 F.3d 669, 674 (5th Cir. 2015)).

The Act's structure and plain language prevents Tofurky from using terms like "plant-based sausage" or "ham style roast." *See, e.g.*, La. Rev. Stat. §§ 3:4743(15)(16); La. Rev. Stat. § 3:4744(B)(9). And in analyzing Tofurky's standing, the lower court found that "Plaintiff's use of 'meat' terms to define non-meat products is arguably proscribed conduct according to the plain language of the Act . . ." ROA. 602.

The Eighth Circuit decision in *Turtle Island Foods, SPC v. Richardson* does not change the result here. 425 F. Supp. 3d 1131 (W.D. Mo. 2019), aff'd sub nom *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694 (8th Cir. 2021). The Missouri

law at issue in that case prohibits only "*misrepresenting* a product as meat that is not derived from harvested production livestock or poultry," Mo. Ann. Stat. § 265.494(7) (emphasis added), which the court interpreted as prohibiting only inherently misleading commercial speech, *Turtle Island*, 425 F. Supp. 3d at 1140 (holding that the statute in question "only prohibits speech which would be misleading"). In contrast, the Louisiana Act categorically prohibits all speech listed in the law, including but not limited to anything that could be construed as "representing" a plant-based product as meat. This vague language means companies could engage in what Louisiana has determined are "intentionally misbrand[ing] or mislead[ing]" representations by calling their products "vegan sausage" or "veggie burger." Or using any term—even with appropriate qualifiers like "vegan" or "plant-based"—that the enforcing agency thinks has been "defined historically in reference to a specific agricultural product."

The State's circular argument that the Court need not evaluate whether its commercial speech restriction violates the First Amendment because it only restricts misleading speech reveals the troubling State action of defining disfavored labeling practices as inherently and intentionally misleading. Such a law is self-fulfilling and must be curtailed. Otherwise, "[a]ll a state would need to do . . . would be to redefine the pertinent language in accordance with its" agenda. *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228, 1238 (11th Cir. 2017). "Then, all usage in conflict" would

be subject to restriction. *Id.* "Such reasoning is self-evidently circular" and would "eviscerate *Central Hudson*." *Id.* Instead, "the state must present evidence" of real-word deception or confusion, which it has utterly failed to do. *Id.* at 1239.

As the State conceded below, ROA. 630, Tofurky's representations are truthful and not inherently misleading.[1] They are also unquestionably prohibited instances of "intentionally misbrand[ing] or misrepresent[ing]" under the Act. Because the Act, on its face, proscribes Tofurky's speech, it is fundamentally unhelpful both to Tofurky and to the Constitutional analysis here that the State apparently has found a limited number of Tofurky's labels not to be misleading. Appellant's Br. 14.

The State cannot feign confusion over the predicament the Louisiana Act puts many companies in—fearing enforcement and self-censoring their speech despite

---

[1] *See also, e.g.*, *Turtle Island Foods v. Soman*, 424 F. Supp. 3d 552, 573–76 (E.D. Ar. 2019) (concluding that there was no legitimate possibility of consumer deception that could support the State of Arkansas' attempt to restrict truthful terms like "burger," "meat," "beef," and "sausage" on Tofurky's plant-based meat products whose labels, "include[d] ample terminology to indicate the vegan or vegetarian nature of the products."); *Miyoko's Kitchen v. Ross*, No. 20-CV-00893-RS, 2020 WL 8361994, at *4 (N.D. Cal. Aug. 21, 2020) (finding plant-based dairy products with appropriate qualifiers like "vegan" are not misleading); *Painter v. Blue Diamond Growers*, 757 F. App'x 517 (9th Cir. 2018); *Ocheesee Creamery LLC v. Putnam*, 851 F.3d 1228 (11th Cir. 2017) (holding that restricting truthful use of the words "skim milk" on the label of milk bottles sold in stores could not withstand First Amendment scrutiny); *Ang v. Whitewave Foods Co.*, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) ("[A]dopting Plaintiffs' position [to remove animal-based names] might lead to more confusion, not less.").

engaging in truthful commercial speech. What the Act prohibits *is* Tofurky's speech, which is unquestionably categorized as intentional misrepresentations by the Act, and yet not inherently misleading to consumers (as repeatedly shown by empirical evidence). The district court thus properly applied the remaining *Central Hudson* factors to evaluate the Act.

### C.     The State has Failed to Demonstrate its Fear of Consumer Confusion is Real and has not Demonstrated that the Act Directly Advances any Substantial Government Interest.

Since the parties have both agreed that the speech at issue is not *inherently* misleading, the burden shifts to the State to proffer evidence that there is a substantial government interest that the Act serves, and that the Act directly advances that interest. Under *Central Hudson*, "the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." *Central Hudson*, 447 U.S. at 564.

Thus, the State's burden to show that a substantial government interest is directly advanced by the Act "cannot be satisfied by 'mere speculation or conjecture.'" *Pub. Citizen Inc. v. Louisiana Att'y Disciplinary Bd*., 632 F.3d 212, 218 (5th Cir. 2011) (quoting *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993)). The State must demonstrate, with hard evidence, that its fear of consumer confusion is real before taking the significant step of prohibiting speech. *Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 309 (5th Cir. 2017);  *Edenfield v. Fane*, 507 U.S.

761, 770–71 (1993)); *see Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 638–39 (6th Cir. 2010) (conducting detailed examination of state's evidence of consumer confusion and concluding that "the proof falls far short of establishing that Ohio consumers have been misled by dairy-product labeling").

Though the government undoubtedly has an interest in preventing consumer deception, the Act's censorship of truthful commercial speech does not "directly and materially" advance that interest because, as explained, representations that are truthful and not inherently misleading are prohibited by the Act. This includes Tofurky's speech, as it is neither false nor misleading. ROA. 680; *Turtle Island*, 424 F. Supp. 3d at 575. As the district court found, "the Act's limitations on Plaintiff's commercial speech likely do not directly advance the State's interest of avoiding consumer confusion" and "Plaintiff presents compelling evidence indicating that consumers are not confused by its labeling…In response, Defendant *fails* to produce evidence indicating that consumers are confused by Plaintiff's labeling." ROA. 680.

In support of sustaining its *allegedly* substantial government interest, the State has failed to offer any evidence, conduct any studies or polling, retain any experts, or make any attempt at all show that consumers are actually confused by the existing labeling on plant-based meat products. The State also has no evidence that any such studies, evidence, complaints, or statistics currently exist or were considered by the Louisiana legislature. Instead, Louisiana legislators and others acknowledged in

testimony leading up to the passage of the Act that a purpose of the act was to protect certain industries. *See* Section I(A), *supra* (citing ROA. 296, 207, 300). Where, as here, there is no evidence showing any consumer confusion exists—and therefore no substantial government interest to be served[2]— courts are admonished not to ignore evidence of pretext when it comes to the alleged government interest at play. *Edenfield* 507 U.S. at 768 ("Neither will we turn away if it appears that the stated interests are not the actual interest served by the restriction.").

Given that the State could not produce any evidentiary support in litigation, it is not a quantum leap to suggest that the Act itself lacked any true justification from the outset. And it also suggests a profound disrespect for Tofurky and other plant-based producers' First Amendment rights. The Supreme Court has made clear that the government cannot restrict commercial speech without making some showing that its restrictions will *in fact* advance the government's interests in an appropriately tailored way. But here, the State has not even tried. That there is so little basis to justify the Act indicates that the government's "stated interests are not the actual interests served by the restriction." *Edenfield*, 507 U.S. at 768. And the First Amendment's protections cannot be so easily cast aside. "[O]therwise, 'a State could with ease restrict commercial speech in the service of other objectives that could not

---

[2] Again, the evidence in the record shows the Act actually *creates* confusion, not solves it. *E.g.*, ROA. 250, 272-73.

themselves justify a burden on commercial expression.'" *Rubin v. Coors Brewing Co.*, 514 U.S. 476 (1995) (quoting *Edenfield*, 507 U.S. at 771).

Regardless of the true government interest served by the Act, the State already conceded in discovery that it has no evidence of consumer confusion caused by the labeling practices the Act restricts; it thus cannot show that the Act's provisions directly advance its purported interest in alleviating such confusion.

### D.    The State Cannot Deny the Act is More Extensive than Necessary to Serve the State's Asserted, But Unproven, Interest.

The final fatal flaw of the Act is that it is a sweeping ban on speech—with no safe harbor for products that use meat terminology only with appropriate qualifiers (like "vegan" or "plant-based"). Again, the State's only response to this final prong of *Central Hudson* is to reassert that the Act only prohibits false statements of fact. But, the Act does not *just* prohibit false statements of fact. It prohibits true speech that the State simply does not want to be in the marketplace—of ideas, or the grocery. The district court correspondingly found that the Act is more extensive than necessary to prevent any purported consumer confusion—noting that "Defendant has failed to address why alternative, less-restrictive means, such as a disclaimer, would not accomplish its goal of preventing consumer confusion," and finding that the State "failed to satisfy the required burden of demonstrating a reasonable fit

between its regulation and the constitutionally-protected speech." ROA. 682-83 (internal citations omitted).

Even if the State had offered evidence showing that customers were confused as to the nature of plant-based meat products (which it has not), the proper remedy here would be to clearly disclose to the customer that the products are not made from animal-based meat. *See Ocheesee Creamery*, 851 F.3d at 1240; *Turtle Island*, 424 F. Supp. 3d at 576. In commercial-speech cases like this one, "the preferred remedy is more disclosure, rather than less." *Bates v. State Bar of Ariz.*, 433 U.S. 350, 375 (1977). Of course, Appellee and all other plant-based meat producers already make the nature of these products abundantly clear, so a disclosure of this kind would be redundant with other laws and unnecessary given the existent labeling conventions—after all, products and marketing for plant-based meat products prominently stress that they are "vegan," "plant-based," "veggie," and "made with plants."

As explained above, the State chose to ban speech rather than assure disclosures and created this Act despite the numerous and longstanding neutral laws that already prohibit misrepresentations to consumers in Louisiana. *See* Section I(A), *supra.* This backdrop, along with the Act's total ban on truthful commercial speech, "gives rise to suspicion that" the Act is motivated by "an impermissible purpose"— that is, the legislature's impermissible interest in "protect[ing] members of the

agricultural industry… ." *Animal Legal Defense Fund v. Wasden*, 878 F.3d 1184, 1198 (9th Cir. 2018). *See* Section D, *supra* (citing ROA. 296, 207, 300). If the true government interest here were preventing (nonexistent) consumer confusion, the Act would simply require what Tofurky and other plant-based meat producers already say, and what consumers need to know—that these products are meat analogues that are "vegetarian," "vegan," and "plant-based."

## IV.    THE ACT IS UNCONSTITUTIONALLY VAGUE

The district court did not reach the issue of vagueness, but in addition to unduly restricting commercial speech, the Act violates the Fourteenth Amendment Due Process Clause because it is unconstitutionally and hopelessly vague. The Act fails to define key terms and thereby "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" and "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

"Regulation of speech must be through laws whose prohibitions are clear." *Service Employees Intern. Union, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010). Because it regulates speech, the Act is subject to "a more stringent vagueness test" than laws regulating other conduct. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). Under this stringent test, even a law that "could conceivably have had some legitimate application" will

be struck down if it is too vague to provide adequate notice of the conduct it prohibits. *Kolender v. Lawson*, 461 U.S. 352, 358, n. 8 (1983). A law is unconstitutionally vague if it "has a capacity to chill constitutionally protected conduct, especially conduct protected by the First Amendment." *Service Employees*, 595 F.3d at 597.

A.    **The Act Fails to Provide People of Ordinary Intelligence a Reasonable Opportunity to Understand What Conduct It Prohibits.**

Section 4744(B)(9) of the Act prohibits "[u]tilizing a term that is the same as or deceptively similar to a term that has been used or defined historically in reference to a specific agricultural product." La. Rev. Stat. § 3:4744(B)(9). The Act does not define the term "historically" nor indicate how far back we should look for relevant uses or definitions. If a term was used 100 years ago to describe an agricultural product, is its use prohibited in 2022?

To give just one example, the term "meat" has been defined historically to mean any solid food, including foods like fruits and nuts. Does that historic definition apply? If so, that would appear to contradict the Act's own definition of "meat" as a product derived only from the carcasses of specified animals. La. Rev. Stat. § 3:4743(10). Nothing in the Act resolves this contradiction.

The Act also does not indicate what it means to be "used or defined." Inclusion of the term "used" indicates that prohibited terms reach far more broadly

than terms that have been historically defined by law or regulation. If citizens in a certain Parish of Louisiana colloquially use a term to refer to a local specialty, can that term not be used on any other food sold anywhere else in the state?

In Louisiana, the term "hog's head cheese" has been used to refer to a specific agricultural product made from pork. Does that mean other products cannot use the term "cheese" on their labels? Is the term "duck sauce" prohibited because "duck" has been used to describe a specific type of poultry, which presumably counts as an "agricultural product?"

The Act's contradictory and inadequate definitions do not enable one acting in good faith to "readily know what conduct [is] prohibited and what conduct [is] permitted," making it likely that regulated persons will self-censor product labels, avoiding a number of terms that would be useful in describing their products to consumers because they *could* potentially violate this provision. *See Hobbs v. Thompson*, 448 F.2d 456, 471 (5th Cir. 1971) (finding a city ordinance with inadequately defined terms unconstitutionally vague).

Indeed, Tofurky has demonstrated that its speech has been chilled because the company fears enforcement under the Act. The uncontroverted evidence before the district court showed that Tofurky "has essentially avoided saying anything new out of fear of enforcement and has refrained from using certain words and images on marketing materials and packages. We have even removed content from

36

our website and online marketing out of fear of enforcement under the Act." ROA. 189. The Act clearly "has a capacity to chill…conduct protected by the First Amendment." *Service Employees*, 595 F.3d at 597 (internal citation omitted). It has already done so.

### B.    The Act Encourages Arbitrary and Discriminatory Enforcement.

Because the Act fails to provide guidance that would enable a person of ordinary intelligence to understand what is prohibited and what is permitted, it encourages arbitrary and discriminatory enforcement. *See Hill*, 530 U.S. at 732; *see also Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020) (a prohibition that "fails to meaningfully guide" the enforcement authority may pose "a substantial risk of arbitrary or discriminatory enforcement").

The State now claims that several of Tofurky's labels do not violate the Act. *See* Appellant's Br. at 5. But the Act's broad and vague prohibitions on utilizing certain terms that have been historically used to refer to agricultural products could easily encompass the non-misleading speech of plant-based producers like Tofurky. The current Commissioner could change his mind, could enforce the Act against Tofurky based on its other product labels, or future Commissioners could disagree with their predecessor's analysis and decide that all of Tofurky's labels violate the Act. Likewise, the Commissioner could decide to enforce the Act only against those producers whose products pose a threat to traditional industries in the state, while

letting others continue to sell products with similar labels. Nothing in the Act provides the level of clarity needed to prevent this type of arbitrary enforcement.

## CONCLUSION

For the foregoing reasons, the Court should **AFFIRM** the rulings of the district court.

**Dated**: August 25, 2022

Respectfully Submitted:

/s/ Scott L. Sternberg
Sternberg, Naccari & White, LLC
935 Gravier Street, Suite 2020
New Orleans, LA 70112
Telephone: 504-534-8961
Facsimile: 504-534-8961

Tarak Ananda, Esq.
Michael Andrew Foley
Jones Walker LLP
201 Saint Charles Avenue, Suite 4900
New Orleans, LA 70170
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
Email: tanada@joneswalker.com

Laura Braden
The Good Food Institute
1120 Connecticut Ave. NW, Ste. 1080
Washington DC 20036
Telephone: (617) 970-1595
Email: laurab@gfi.org

Amanda Howell
Animal Legal Defense Fund
525 East Cotati Avenue
Cotati, CA 94931
Telephone: (707) 795-2533
Email: ahowell@aldf.org

*Counsel for Plaintiff-Appellee Turtle Island Foods, S.P.C.*

# CERTIFICATE OF SERVICE

I certify that on August 25, 2022, the foregoing document was served upon all parties in Case No. 22-30236 by filing said brief via the Court's CM/ECF filing system and via email to all counsel of record.

/s/ Scott L. Sternberg
*Counsel for Plaintiff-Appellee Turtle Island Foods, S.P.C.*

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), and 5th CIR. R. 32.1:  this document contains 9026 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman 14-point font.

/s/ Scott L. Sternberg
*Counsel for Plaintiff-Appellee Turtle Island Foods, S.P.C.*