United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
April 12, 2023
Lyle W. Cayce
Clerk

No. 22-30236

Turtle Island Foods, S.P.C., *doing business as* Tofurky Company,

>*Plaintiff—Appellee,*

*versus*

Michael G. Strain, *in his official capacity as Commissioner of Agriculture and Forestry*,

>*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:20-CV-674

_____

Before Smith, Clement, and Wilson, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

  A Louisiana statute bars food labeling practices that are misleading. The district court found that such a bar infringes on the free speech rights of food labelers and enjoined the law. We disagree, and so REVERSE and VACATE.

# I

  In 2019, Louisiana passed the Truth in Labeling of Food Products Act (the "Act") to "protect consumers from misleading and false labeling of food

No. 22-30236

products that are edible by humans." La. Rev. Stat. §§ 3:4741–4746. The Act bars, among other things, the intentional "misbrand[ing] or misrepresent[ing of] any food product as an agricultural product" through several different labeling practices. *Id.* § 3:4744(B). Those practices include "[r]epresenting a food product as meat or a meat product when the food product is not derived" from various animals. *Id.* § 3:4744(B)(4). Enforcement of the Act is charged to Louisiana's Commissioner of Agriculture and Forestry, a position currently occupied by Michael Strain. Despite formulating rules and regulations pertaining to the Act's enforcement, no action has yet been taken. All the same, the statute imposes a maximum penalty of $500 per violation per day. La. Rev. Stat. § 3:4746(A).

Turtle Island Foods, S.P.C. (d/b/a Tofurky), is a Washington company headquartered in Oregon. Tofurky, "founded on the principle that people, animals, and the environment matter more than profit margins," is committed to producing and marketing 100% plant-based food products. Those products include plant-based "chick'n," deli slices, burgers, sausages, tempeh, and roasts. Tofurky's labels say as much:



Each label, while employing meat-esque words like "sausage" or "burger," prominently indicates that the product is "plant-based."

Tofurky markets and sells its products in Louisiana. But now, thanks to the Act, Tofurky believes it operates under a constant threat of enforcement. Per its CEO, Tofurky lacks the financial and logistical resources to create Louisiana-specific labels and cannot guarantee that any Tofurky products meant for sale elsewhere would be excluded from Louisiana. Further, changing Tofurky's marketing nationwide would cost almost $1,000,000. Rather than do so, Tofurky has "essentially avoided saying anything new out of fear of enforcement and has refrained from using certain words and images on marketing materials and labels." It has also "removed content from [its] website and online marketing out of fear of enforcement . . . ."

Tofurky sued Strain, seeking declaratory and injunctive relief. The parties filed cross motions for summary judgment, and the district court sided with Tofurky. It held that Tofurky had standing to challenge the Act

and that the statute was an unconstitutional restriction on Tofurky's right to free speech. The State now appeals both holdings.

## II

We review de novo the district court's ruling on standing. *See Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1083 (5th Cir. 2022). We also review a grant (or denial) of summary judgment de novo. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). A "court should grant summary judgment when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

### A

First, we must determine whether Tofurky has standing to challenge Louisiana's Truth in Labeling of Food Products Act. We conclude it does.

To establish standing, Tofurky must demonstrate (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) is fairly traceable to the defendant's actions; and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The state challenges whether Tofurky has suffered an injury in fact.[1]

Tofurky challenges the statute prior to enforcement. In pre-enforcement free speech challenges, "chilled speech or self-censorship is an injury sufficient to confer standing." *Barilla v. City of Houston*, 13 F.4th 427,

---

[1] Though we focus primarily on standing's injury in fact prong, we must nevertheless ensure that all standing components are met. *See Cleartrac, LLC v. Lanrick Contractors, LLC*, 53 F.4th 361, 364 (5th Cir. 2022). And here, the other two components are: the Act, threatening millions in civil damages for violations, is clearly the cause of Tofurky's chilled speech, and Tofurky's sought relief—an injunction forbidding Louisiana from enforcing the Act—would redress that harm. Tofurky's standing, then, turns only on whether it has suffered an injury in fact.

431 (5th Cir. 2021) (citations omitted). Tofurky "need not have experienced 'an actual arrest, prosecution, or other enforcement action' to establish standing." *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Instead, all Tofurky must show is that: (1) it intends to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute. *Driehaus*, 573 U.S. at 159.

Tofurky satisfies all three conditions.[2] *First*, Tofurky intends to engage in conduct arguably affected by a constitutional interest. The First Amendment protects commercial speech so long as that speech is not misleading and concerns lawful activity. *See Am. Acad. of Implant Dentistry v. Parker*, 860 F.3d 300, 306 (5th Cir. 2017) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)). Tofurky insists that it intends to engage in commercial speech through its past and future labels. We, like the district court, agree. Tofurky's labels and marketing—which no one contends are misleading or involve illegal activity—are just the kind of commercial activity the First Amendment protects.

*Second*, Tofurky's intended actions are arguably proscribed by the Act. The Act directs that "[n]o person shall intentionally misbrand or

---

[2] The State argues that the *Barilla* (or *Driehaus*) standard applies only to the motion to dismiss stage, rather than the summary judgment stage. But nothing in either case was so limited, and courts have applied the *Barilla* standard at summary judgment many times. *See, e.g.*, *N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 49–52 (1st Cir. 2021) (applying *Driehaus* to a motion to dismiss converted to a motion for summary judgment); *N.J. Bankers Assoc. v. Att'y Gen. N.J.*, 49 F.4th 849, 855–56 (3rd Cir. 2022) (applying *Driehaus* to cross appeals of summary judgment motions); *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 217–18 (4th Cir. 2020) (similar). What changes is not the standard, but rather the evidentiary burden on the party claiming standing. *See Barilla*, 13 F.4th at 431 (explaining that the plaintiff bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation" (citation omitted)).

misrepresent any food product as an agricultural product through any activity including:

> [ . . . ]
>
> (2) Selling a food product under the name of an agricultural product.
>
> [ . . . ]
>
> (4) Representing a food product as meat or a meat product when the food product is not derived from a harvested beef, pork, poultry, alligator, farm-raised deer, turtle, domestic rabbit, crawfish, or shrimp carcass.
>
> [ . . . ]
>
> (6) Representing a food product as beef or a beef product when the food product is not derived from a domesticated bovine.
>
> (7) Representing a food product as pork or a pork product when the food product is not derived from a domesticated swine.
>
> (8) Representing a food product as poultry when the food product is not derived from domesticated birds.
>
> (9) Utilizing a term that is the same as or deceptively similar to a term that has been used or defined historically in reference to a specific agricultural product.

LA. REV. STAT. § 3:4744.[3] The statute defines "misbrand" as "intentionally identify[ing] or label[ing] a food product in a false or misleading way." *Id.* § 3:4743(12). To "misrepresent" also requires intention. *See id.* § 3:4743(13). "Meat" is defined as "a portion of a beef,

---

[3] The Act defines "person" as "an individual, partnership, limited liability company, limited liability partnership, corporation, trust, firm, company, or other entity doing business in Louisiana." LA. REV. STAT. § 3:4743(14). That definition encompasses Tofurky.

pork, [or] poultry . . . carcass that is edible by humans but *does not include* a . . . [s]ynthetic product derived from a plant, insect, or other source." *Id.* § 3:4743(10)(a) (emphasis added).

To the State, the intention requirement begins and ends the game: because Tofurky does not *intend* to mislead with any of its labels and has not proven "that it intends to break Louisiana's labeling law," nothing Tofurky does is proscribed by the statute. That contrasts with *Barilla*, says the State, where the plaintiff alleged he would openly busk where it was illegal to do so. Per the State, to have standing, Tofurky needs to "establish[] that it intends to label its food products by misbranding them or by misleading its customers so as to be in violation . . . ."

Tofurky insists that the intention to mislead is not required. Instead, says Tofurky, the leading clause of § 3:4744(B)—"No person shall intentionally misbrand or misrepresent any food product as an agricultural product through any activity including:"—*expands* the definition of "intentionally misbrand or misrepresent" to include the twelve subsequent actions. Misbranding or misrepresenting then *includes* "representing a food product as meat" when it did not come from a harvested animal or "as pork or a pork product" when it did not come from a domesticated swine. So, because Tofurky sells products labeled and advertised as plant-based beef, pork, or poultry—but that are *explicitly exempted* from the Act's definition of meat because they are plant-derived—it is *by definition* misbranding its products, and faces liability.

Tofurky need not establish that it openly intends to violate the Act. As the Supreme Court has stressed time and again, "[n]othing in [its] decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Driehaus*, 573 U.S. at 163; *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 301 (1979)

(holding a case justiciable even though the plaintiffs disavowed any intent to "propagate untruths"). The State demands too much of Tofurky. While everyone agrees that Tofurky does not intentionally misrepresent its products as meat and does not intend to start doing so, Tofurky has standing if its intended action—continuing with its "plant-based" labels that use meat-esque words—is *arguably* proscribed.

And here, it is: the Act arguably sweeps broadly enough to capture Tofurky's conduct. Though the State belabors that § 4744, and the Act's definitions for "misbrand" and "misrepresent," require *intentional* mislabeling, Tofurky's alternative reading is arguable. As Tofurky notes, the demand for intention could be read one of two ways. First, it could mean that the actor *intended* to mislead (*e.g.*, we make a soy product, but we want you to think it's chicken and label it so). This interpretation would not ensnare Tofurky's conduct. But second, it could also mean that the actor intentionally used a label that was independently misleading, the actor's intent in using that label notwithstanding (*e.g.*, we make a soy product and label it in a way that we think conveys that it's a soy product, but you're confused and think the product is chicken). This latter interpretation could doom Tofurky if a consumer (or future Commissioner) believes its labels to be misleading, no matter Tofurky's intent in using those labels. Further still, the Act does not define "represent." If Tofurky is correct that the § 4744 subparts expand the definition of "intentionally misbrand or misrepresent," that they employ meat-esque words on their labels could arguably *represent* those products as meat and, therefore, misbrand them. Additionally, there is no explicit safe harbor for meat-like, plant-based products as found in similar statutes in other states. *See, e.g.*, Okla. Stat. tit. 2 § 5-107 ("[P]roduct packaging for plant-based items shall not be considered in violation of [this statute] so long as the packaging displays that the product is derived from

plant-based sources . . . ."). Instead, the Act clarifies that Tofurky's products are *not* meat and punishes representations that they are.

While Tofurky's interpretation may not be the *best* interpretation, the test doesn't require that. *See, e.g.*, *Picard v. Magliano*, 42 F.4th 89, 98 (2d Cir. 2022) ("The Supreme Court's opinion in [*Driehaus*] makes clear that courts are to consider whether the plaintiff's intended conduct is '*arguably* proscribed' by the challenged statute, not whether the intended conduct is *in fact* proscribed."). Because Tofurky's reading is *arguable*, it satisfies this prong.

And *third*, Tofurky faces a substantial (or credible) threat of enforcement. When we face a pre-enforcement challenge "to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, [we] will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) (quotations and citation omitted). Tofurky plainly belongs to a class that is facially restricted by the policy: it is a company that labels, markets, and sells food products in Louisiana. So, we assume a credible prosecutorial threat absent compelling evidence to the contrary.

Nothing here compels a different conclusion. The Commissioner admits that his office has formulated rules and regulations for the Act's implementation. Once this case ends, he plans to begin enforcement. While the State insists that Tofurky's nine demonstrative labels do not violate the Act, it nevertheless declines to make any "representations as to whether any other label of Tofurky would be violative of the provisions of the Act." Even the State's disclaimed intent to penalize the nine labels is not compelling. *See Speech First*, 979 F.3d at 336 (holding as "not compelling" evidence that the policymaker "lack[ed] any intention to penalize the intended conduct of [the

plaintiff's] members"). And besides, nothing binds the Commissioner here—he (or a future holder of his office) could change his mind and decide Tofurky's labels *do* violate the statute. *Cf. Turtle Island Foods SPC v. Soman*, 2022 WL 4627711, at *8 (E.D. Ark. 2022) ("There is nothing stopping the State from simply changing its mind and deciding to prosecute Tofurky during the pendency of this litigation, despite its expressed intention thus far to postpone any enforcement until the resolution of Tofurky's constitutional challenge."). Thus, Tofurky faces a substantial threat of enforcement.

All told, then, Tofurky satisfies the three prongs needed to demonstrate an injury in fact in a pre-enforcement freedom of speech challenge. Because the other two prongs of standing are also satisfied, Tofurky's challenge may proceed.

**B**

We move on to the merits of Tofurky's action. As a preliminary matter, it is unclear whether Tofurky challenges the Act facially or as applied to itself. Therefore, we turn to the language of the lower court's order to evaluate whether it reviewed the case as a facial challenge or as applied to Tofurky. *See Am. Acad. of Implant Dentistry*, 860 F.3d at 306 ("We find that answer [to whether the case is a facial or applied challenge] in the district court's own words . . . ."). "The distinction [between a facial and as applied challenge] . . . goes to the breadth of the remedy employed by the Court . . . ." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010) (cleaned up). We contrast a facial challenge with "a narrower remedy." *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477–78 (1995). Here, the district court found the Act in its entirety to be unconstitutional and invalidated the entire statute. So, we evaluate Tofurky's constitutional challenge as one targeting the Act's facial validity.

"Principles of judicial restraint must be employed before a federal court may declare a state law unconstitutional." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013). In the commercial speech context, "[t]o succeed in a typical facial attack, [Tofurky] would have to establish 'that no set of circumstances exists under which [the Act] would be valid,' or that the statute lacks any 'plainly legitimate sweep....'" *United States v. Stevens*, 559 U.S. 460, 472 (2010) (citation omitted).[4] Also, "[u]nder the constitutional-avoidance canon," we "shun an interpretation that raises serious constitutional doubts and instead adopt an alternative that avoids those problems." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). With these principles in mind, we review the district court's facial invalidation of the Act and the State's challenge to that decision.

In the merits section of its order, the district court evaluated Tofurky's claim that the Act unconstitutionally infringed its commercial free speech under the First Amendment. The district court then applied the *Central Hudson* framework to its interpretation of the Act. *See Cent. Hudson*, 447 U.S. at 566. The district court accepted the parties' agreement that Tofurky's commercial speech is not misleading. It then found that the State claimed a valid interest in ensuring its citizens are not misled by false or misleading labeling and advertising. However, the lower court was skeptical whether the statute advanced the State's proclaimed interest in protecting citizens from misleading corporate speech. Regardless, the district court concluded that the Act was more extensive than necessary to achieve the State's interest, violating the standard laid out in *Central Hudson*. Having determined that the Act failed one, and possibly two, prongs of the *Central*

---

[4] In the commercial free speech context, the overbreadth doctrine does not apply. *See Vill. of Hoffman Ests. v. Flipside Hoffman Ests., Inc.*, 455 U.S. 489, 496–97 (1982).

*Hudson* test, the district court declared the law unconstitutional and enjoined the State from enforcing it.

The State challenges the district court's order on two grounds. First, it argues that the Act applies only to "person[s who] intentionally misbrand or misrepresent any food product as an agricultural product [as defined by the Act.]" *See* La. Rev. Stat. § 3:4744(B). Consequently, says the State, the *Central Hudson* analysis simply does not apply to the Act. Second, the State argues that if we agree with the district court and find *Central Hudson* controls the outcome of this appeal, we should reverse the trial court because it incorrectly applied the test. Specifically, the State contends that the Act's intent to "misbrand or misrepresent" requirement ensures that it directly advances the State's interest and goes no further than necessary to advance that interest. Via either path, the State concludes that we should reverse the district court's order.

Tofurky counters that the plain meaning of the Act's text extends beyond misleading speech to encompass the company's non-misleading labeling. It argues that the district court correctly decided *Central Hudson* controlled and did not err in its application. Additionally, Tofurky makes a new argument—that the Act is unconstitutionally vague—which was not adjudicated by the lower court.

The Supreme Court held in *Central Hudson* that the First Amendment's commercial free speech protections only apply to "communication [that] is neither misleading nor related to unlawful activity." *Cent. Hudson*, 447 U.S. at 564. The Court further elaborated, "there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it or commercial speech related to illegal activity." *Id*.

at 563–64 (citation omitted). So, the First Amendment does not protect commercial statements that are actually misleading, meaning they deceive or are inherently likely to deceive. *See Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 488 (5th Cir. 2019). But statements that are only *potentially misleading* are safeguarded by the First Amendment and restrictions on such speech must survive intermediate scrutiny. *Id.* The State argues that the Act applies only to actually misleading speech, so it falls outside the First Amendment's protection of commercial free speech. We agree.

In a facial challenge, Tofurky bears the heavy burden of showing that either "'no set of circumstances exists under which [the Act] would be valid,' or the statute lacks any 'plainly legitimate sweep . . . .'" *Stevens*, 559 U.S. at 472 (citation omitted). "In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–50 (2008). The Supreme Court has also empowered us to "shun an interpretation that raises serious constitutional doubts and instead . . . adopt an alternative that avoids those problems." *Jennings*, 138 S. Ct. at 836; *see also Wash. State Grange*, 552 U.S. at 450–51 (explaining the myriad reasons the Court disfavors facial challenges). So, courts are required "to accept a narrowing construction of a state law in order to preserve its constitutionality." *Voting for Am.*, 732 F.3d at 396.

The Act states, in the relevant part, "[n]o person shall *intentionally misbrand* or *misrepresent* any food product as an agricultural product . . . ." La. Rev. Stat. § 3:4744(B) (emphasis added). The definitions section of the Act defines "[a]gricultural product" as "any beef, pork, poultry, crawfish, shrimp, meat, sugar, or rice product that is edible by humans." *Id.* § 3:4743(1). As the State construes the Act, it only prohibits a company from

intentionally misleading a consumer by claiming a product is made from beef, pork, poultry, crawfish, shrimp, meat, sugar, or rice when it is not. Thus, by the State's construction, the Act only applies to actually misleading representations that fall outside the First Amendment's protection for commercial free speech as defined by *Central Hudson*.

The district court did not lend any weight to the State's interpretation of the statute and instead chose to apply *Central Hudson*'s analysis to its own interpretation of the Act. In doing so, the district court concluded that the Act covered more speech than was necessary to support the State's interest and found the law unconstitutional. But by failing to accept the State's narrower construction of the Act's text, the district court erred. *See Voting for Am., Inc.*, 732 F.3d at 398 ("[W]e must accept the state's narrowing construction of the [Act.]").

Tofurky would like us to agree with the district court and disregard the State's reading of the Act. It asserts that the statute is appropriately construed as barring its truthful conduct when it sells products labeled "veggie burgers" or "vegan sausage." Appellee takes issue with the "laundry list of speech" that it argues the Act defines as "'intentionally misbrand[ing] or misrepresent[ing].'" As an illustration of its point, Tofurky examines paragraph (9) of the Act, which states that intentionally misbranding or misrepresenting includes "[u]tilizing a term that is the same as or deceptively similar to a term that has been used or defined historically in reference to a specific agricultural product." La. Rev. Stat. § 3:4744(B)(9); Tofurky reads this language as encompassing its conduct in advertising, labeling, and selling "plant-based sausage" or "ham-style roast." Tofurky worries that it could be held liable for making a plant-based product and labeling it in a way that it thinks conveys that the item is a plant-based product. This could happen, according to Tofurky, because its labeling unintentionally confuses a consumer into thinking its product is an

agricultural product as defined by the Act. Tofurky concludes by arguing that *Central Hudson*'s First Amendment protections should apply to its conduct so it can be protected from enforcement actions in the event of this outcome. *See Express Oil Change*, 916 F.3d at 488.

Although this is a way to read the Act, it is far from the *only* way to read the Act. Nothing in the statute's language requires the State to enforce its punitive provisions on a company that sells its products in a way that just so happens to confuse a consumer. *See id.* at 488. The State's construction limits the Act's scope to representations by companies that *actually intend* consumers to be misled about whether a product is an "agricultural product" when it is not. This interpretation is not contradictory to the Act, and we thus accept it for the present purposes of evaluating Tofurky's facial challenge. *See Voting for Am., Inc.*, 732 F.3d at 398 ("[A] narrowing interpretation is not contradictory to the statute, and the court was thus required to accept it for present purposes [of a facial challenge]."); *see also Express Oil Change*, 916 F.3d at 488.

The district court erred in ignoring the State's limiting construction and in implementing its own interpretation of the Act. That narrower interpretation regulates content that falls outside the purview of *Central Hudson*. Consequently, we conclude that the Act, when narrowly construed, does not violate the First Amendment's protection of commercial free speech.

## III

The district court's judgment is REVERSED, and its injunction is VACATED.